**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 23-34815 (JPN) |
| GALLERIA 2425 OWNER, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |
| 2425 WL, LLC | § | |
| | § | |
| Appellant | § | Civil Action No. 4:24-cv-02590 |
| | § | |
| v. | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | |
| S.A.K.P., NEW YORK BRANCH; | § | |
| CHRISTOPHER R. MURRAY, | § | |
| CHAPTER 11 TRUSTEE | § | |
| | § | |
| Appellees. | § | |

**MOTION TO DISMISS APPEAL**

## TABLE OF CONTENTS

Page

Summary of Key Facts and Argument ......................................................................... 1

Background ................................................................................................................... 3

    A.  2425 WL's Untimely Designation of Record and Statement of Issues for Appeal ............ 3

    B.  The Confirmed Plan Is Effective and Substantially Consummated ................................... 4

    C.  Dismissal is Appropriate Given the Appellate Issues Raised by 2425 WL ...................... 6

The Appeal Should Be Dismissed ................................................................................ 8

    A.  2425 WL's Late Designation of Record and Statement of Issues Compels Dismissal ............................................................................................................. 8

        i.  2425 WL Has Been Obstinately Dilatory ................................................... 9

        ii.  Prejudice to NBK ..................................................................................... 10

    B.  2425 WL's Appeal Is Moot ..................................................................................11

        i.  The Plan Has Been Substantially Consummated ....................................... 12

        ii.  The Appeal Will Affect the Right of Parties Not Involved In the Appeal and/or the Success of the Plan ................................................................................. 14

Conclusion ................................................................................................................. 15

TABLE OF AUTHORITIES

Pages(s)

Cases

*In re ASARCO L.L.C.*,
    401 F. App'x 914 (5th Cir. 2010) ..................................................................... 14

*In re Beverly Mfg. Corp.*,
    778 F.2d 666 (11th Cir. 1985) ...................................................................... 9, 10

*In re Blast Energy Servs. Inc.*,
    593 F.3d 418 (5th Cir. 2010) ..................................................................... 14, 15

*In Re Braniff Airways, Inc.*,
    774 F.2d 1303 (5th Cir. 1985) ............................................................................ 9

*In re Hammersmith Development Co.*,
    248 F.3d 1142 (5th Cir. 2001) .......................................................................... 14

*In re Highland Capital Mgmt., L.P.*,
    48 F.4th 419 (5th Cir. 2022) .......................................................................... 6, 7

*In re Hilal*,
    534 F.3d 498 (5th Cir. 2008) ........................................................................... 12

*In re Manges*,
    29 F.3d 1034 (5th Cir. 1994) ...................................................................... 11, 14

*In re Nikolai*,
    5 F.3d 1495 (5th Cir. 1993) ............................................................................... 9

*In re Pacific Lumber Co.*,
    584 F.3d 229 (5th Cir. 2009) .............................................................. 12, 14, 15

*In re Pyramid Mobile Homes, Inc.*,
    531 F.2d 743 (5th Cir. 1976) ....................................................................... 9, 10

*In re Scopac*,
    624 F.3d 274 (5th Cir. 2010) ........................................................... 11, 12, 13, 14

*In re Serra Builders, Inc.*,
    970 F.2d 1309 (4th Cir. 1992) .......................................................................... 10

*In re Sneed Shipbuilding, Inc.*,
    916 F.3d 405 (5th Cir. 2019) ........................................................................... 11

*In re Superior Offshore Int'l, Inc.*,
   591 F.3d 350 (5th Cir. 2009) ...............................................................15

*In re Texas Grand Prairie Hotel Realty, LLC*,
   710 F.3d 324 (5th Cir. 2013) ...............................................................11

*In re UNR Indus., Inc.*,
   20 F.3d 766 (7th Cir. 1994) ...............................................................12

Statutes and Codes

United States Code
   Title 11, section 363(m)...............................................................11
   Title 11, section 541(a)...............................................................2
   Title 11, section 1101(2)...............................................................12
   Title 11, section 1103(c)...............................................................7

Rules and Regulations

Federal Rules of Bankruptcy Procedure
   Rule 3018...............................................................6
   Rule 8003(a)(2)...............................................................8
   Rule 8009(a)(1)...............................................................8, 11
   Rule 8009(a)(1)(B)(i)...............................................................8
   Rule 8009(a)(1)(B)(ii)...............................................................4
   Rule 8013(a)...............................................................1
   Rule 9006...............................................................4

Pursuant to Rule 8013(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") moves to dismiss the appeal (the "Appeal") filed by 2425 WL, LLC ("2425 WL") - the Debtor's affiliate which like the Debtor is ultimately owned and controlled by Ali Choudhri ("Mr. Choudhri") - of the Bankruptcy Court's unstayed order confirming NBK's plan of liquidation for the Debtor (the "Confirmation Order"), stating as follows:[1]

## SUMMARY OF KEY FACTS AND ARGUMENT

1.    A cursory review of the docket and filings in the Bankruptcy Court leads to the following inescapable conclusions:

> a.    2425 WL, which never sought to stay the Confirmation Order, delayed perfecting the Appeal expecting that its preferred acquiror of the Debtor's real property (the "Property"), QB Loop Property LP ("QB Loop"), would fulfill its purchase obligation as the winning bidder at a Bankruptcy Court approved auction.  In contrast to NBK (which was the stalking horse bidder and only other bidder at the auction), QB Loop had agreed to assume a lease with another Choudhri owned entity and affiliate of 2425 WL and the Debtor, Jetall Companies, Inc. ("Jetall").[2]

> b.    Within three hours of the Chapter 11 trustee's (the "Trustee")[3] notice that QB Loop had failed to close and he instead would be selling the property to NBK as the backup bidder, 2425 WL filed its designation of record and issues for this Appeal nearly three weeks late, without requesting permission to do so or providing any explanation (let alone a justifiable explanation) for its delay, continuing a multi-year pattern of Mr. Choudhri and his affiliates doing almost anything to prevent NBK from exercising its secured creditor rights.

---

[1]  In support of this motion to dismiss, NBK also submits the *Declaration of Charles C. Conrad* ("Conrad Decl.") attached as Exhibit A.

[2]  Although QB Loop and Mr. Choudhri disclaim any ownership interest in QB Loop by Mr. Choudhri, Mr. Choudhri's family members or their trusts are investors in QB Loop.

[3]  The Bankruptcy Court ordered the appointment of a Chapter 11 trustee for the Debtor on January 31, 2024, shortly after the Chapter 11 case was filed.  Christopher R. Murray was confirmed as the Trustee in February 2024.  (*See* Bankruptcy Docket Nos. 99 and 121.)

c.       Because the Confirmation Order was not stayed pending appeal and the order approving the sale to NBK is an unstayed final order from which no appeal was taken, among other things: (i) the Trustee and NBK have consummated the sale of the Property to NBK, (ii) NBK's confirmed plan of liquidation (the "Plan") has gone effective and is substantially consummated, (iii) NBK has contributed the amounts it was obligated to pay to the Debtor's estate pursuant to the confirmed Plan, (iv) claims, particularly secured claims of taxing authorities, have been satisfied from money NBK funded because the Debtor's estate lacks the resources or value to do so, (vi) the liquidation trust provided for under the confirmed Plan has been established and funded, and (vi) estate-controlled litigation against NBK has been dismissed with prejudice in reliance on the releases ordered by the unstayed Confirmation Order. [4]

2.       Based on the forgoing, even if the Appeal had any merit (which it does not), reversal of the Confirmation Order would require among other things:

a.       Unwinding the acquisition of the property by NBK, even though NBK was found to be a good faith purchaser entitled to the protections against a sale being unwound on appeal under section 363(m) of the Bankruptcy Code and no stay of the sale order was sought or obtained and no appeal of the sale order was ever taken.

b.       Recovering completed distributions to creditors to reimburse NBK for contributions made pursuant to the confirmed Plan.

c.       Voiding resolutions with creditors regarding the amount and treatment of their claims under NBK's confirmed Plan, including lawsuits which have been dismissed in reliance on the unstayed Confirmation Order.

d.       Returning the acquired property, with demonstrated value insufficient to satisfy NBK's debt and insufficient revenue to cover its own current expenses, to the estate.

e.       Rewarding 2425 WL for failing to comply with the Bankruptcy Rules.

---

[4] References to "estate" mean a debtor's estate that is created upon a bankruptcy filing. *See* 11 U.S.C. § 541(a).

3.      Under these circumstances, the Court must dismiss the Appeal.  First, 2425 WL failed to timely file its designation of the appellate record and the issues on appeal.  It never sought leave to extend the deadline for filing or forgiveness for having ignored it.  It merely changed course when the perceived benefit of a closing with QB Loop for an affiliate under common control evaporated, which is not a valid excuse for non-compliance but is ample justification for dismissal.

4.      Second, the Appeal is moot under any standard.  No stay of the Confirmation Order was sought or obtained, there is no meaningful issue of merit raised by the appeal, and there is no relief that can be crafted for 2425 WL that would not require unwinding completely the substantially consummated confirmed Plan, including NBK's cash contributions under the Plan to fund creditor payments, payments to those creditors and NBK's acquisition of the real property as the backup bidder at the auction.  No subset or alternative or limited relief can be crafted that would not vitiate entirely the bargain made through the confirmed Plan, including the distributions accepted by creditors in reliance on it.

## BACKGROUND

1.      The above-captioned Debtor filed its second chapter 11 bankruptcy under the above-referenced bankruptcy case caption in the United States Bankruptcy Court for the Southern District, Houston Division (the "Bankruptcy Court").

### A.  2425 WL's Untimely Designation of Record and Statement of Issues for Appeal

2.      On July 8, 2024, the Bankruptcy Court entered an order approving the sale of the Debtor's Property located at 2425 West Loop South, Houston, Texas 77027 to QB Loop, as the winning bidder at a Bankruptcy Court supervised auction, under an asset purchase agreement (the "APA") between the Trustee and QB Loop (the "Sale Order").  (*See* Conrad Decl., Ex. 1.)  The Sale Order also authorized the Trustee to sell the Property to NBK under its Stalking Horse Purchase Agreement (the "Stalking Horse Agreement") if QB Loop failed to close the sale by QB

Loop's "Outside Closing Date" of August 8, 2024 under its APA. (*See id.*, Ex. 2.) No one appealed the Sale Order.

3.      QB Loop intended to assume a lease with one of Mr. Choudhri's affiliates, Jetall, as a tenant in the Property, and it filed a motion to have that lease assumed and assigned to it. (*See id.*, Ex. 3.) In contrast, NBK's backup bid made clear that it would not assume executory contracts and leases, including the lease with Jetall. (*See id.*, Ex. 4)

4.      On August 9, 2024, the Trustee filed a notice that QB Loop failed to close the sale by the Outside Closing Date. (*See id.*, Ex. 5.) Axiomatically, that meant that Jetall's lease would not be assumed.

5.      ***Three hours later***, 2425 WL filed its designation of record and statement of issues for its Appeal of the Confirmation Order that had been due three weeks earlier on July 22, 2024. (*See id.*, Ex. 6.) 2425 WL never sought leave to file late, and it has never provided any explanation for missing this deadline. The deadline for filing the designation of record and statement of issues for this Appeal is not only set out clearly in Bankruptcy Rule 8009(a)(1)(B)(ii), but the Bankruptcy Court issued a notice to 2425 WL, among others, that 2425 WL had 14 days from the day it noticed its appeal of the Confirmation Order on July 6, 2024, to file and serve its designation of record and statement of issues. (*See id.*, Ex. 7.) Because 14 days from July 6, 2024 fell on a Saturday, Bankruptcy Rule 9006 automatically extended 2425 WL's deadline to the next business day, Monday, July, 22, 2022.

**B.  The Confirmed Plan Is Effective and Substantially Consummated**

6.      Although 2425 WL timely filed a notice of appeal of the Confirmation Order, it never sought or obtained a stay of that order. Everyone, therefore, is obliged to perform in accordance with the terms of the Confirmation Order and the Plan it confirmed.

7.      Accordingly, after QB Loop failed to close by its Outside Closing Date, the Trustee and NBK proceeded to consummate the sale of the Property to NBK pursuant to the Sale Order and NBK's Stalking Horse Agreement.

8.      The sale to NBK was consummated on Tuesday, August 20, 2024 (the "Closing"). The Closing triggered the following, among other things:

> a.  The conditions for the Plan going effective were satisfied. These conditions included, without limitation, that the Closing occur and the Confirmation Order be in effect and not stayed. (*See* Conrad Decl., Ex. 4, Plan Art. VIII.B.)
>
> b.  The Plan automatically went effective on August 21, 2024. (*See* Conrad Decl., Ex. 4, Plan Art. VIII.B; Ex. 8.)
>
> c.  Contemporaneously with the Closing, NBK, in accordance with its obligations under the confirmed Plan, funded $4,510,862.80 in cash for the following:
>
>> i.   Making payments to secured creditors with liens on the Property senior to NBK's liens (mostly governmental tax claims) in agreed amounts with those creditors in accordance with treatment afforded those creditors under the confirmed Plan (*See* Conrad Decl., Ex. 4, Plan Art. I.A(60) and Art. III.B.);
>>
>> ii.  Funding estimated amounts for priority unsecured claims of the Debtor (*See id.*, Plan Art. II and Art. III.B(c).);
>>
>> iii. Funding the dollars that will be available for a guaranteed distribution to non-insider general trade creditors of the Debtor under the confirmed Plan (*See id.*, Plan Art. VI.C.);
>>
>> iv.  Funding estimated unpaid administrative expenses of the Chapter 11 case (*See id.*); and
>>
>> v.   Funding the liquidation trust established pursuant to the confirmed Plan (*See id.*).

9.      Not only were these amounts funded, but distributions were made to secured creditors with senior liens in full satisfaction of their claims as provided for by the confirmed Plan,

and they released their liens on the Property. (*See* Conrad Decl., Ex. 9.). Also, estate claims against NBK have been dismissed with prejudice because claims against NBK have been released by the unstayed Confirmation Order. (*See* Conrad Decl., Ex. 4 ¶ P.; Plan Art. IX.D.)

10.     As required by the Confirmation Order, NBK has filed a notice of the effective date and substantial consummation of the Plan. (*See* Conrad Decl., Ex. 8.)

**C. Dismissal is Appropriate Given the Appellate Issues Raised by 2425 WL**

11.     In its untimely filed statement of issues on appeal, 2425 WL raises legal issues that, if sustained, would require the complete unwinding of the substantially consummated Plan. But those issues lack merit, and thus do not limit this Court's ability to dismiss the Appeal. *See In re Highland Capital Mgmt., L.P.*, 48 F.4th 419, 437-38 (5th Cir. 2022). For example, 2425 WL challenges the Bankruptcy Court's conclusion that an impaired creditor class accepted the Plan which, if sustained, would require the entirety of the Confirmation Order to be vacated and all actions taken based on the unstayed Confirmation Order would have to be unwound. The basis for 2425 WL's challenge was that NBK's vote in favor of the Plan should have been discarded because 2425 WL had objected NBK's claims and NBK's claims had not been estimated pursuant to Bankruptcy Rule 3018. But not once, but twice, prior to issuing the Confirmation Order, the Bankruptcy Court – based on a record established by 2425 WL and Mr. Choudhri at two full evidentiary hearings - found that the objections to NBK's claims lack merit. (*See* Conrad Decl., Exs. 10 and 11)[5] There was no error counting NBK's claim in favor of the Plan.

12.     2425 WL also challenges the classification and treatment of various claims, including its own, which if sustained would alter the basic terms of the bargain under which NBK

---

[5] Indeed, not once but twice since entry of the Confirmation Order, the Bankruptcy Court has confirmed this ruling. It has dismissed lawsuits by both 2425 WL and Mr. Choudhri raising effectively the same objections to NBK's claims that were embodied in 2425 WL's claim objection. (*See* Conrad Decl., Ex. 12 and 13.)

funded the Plan and the treatment of NBK under the Plan, requiring the return of its funding and recovery of distributions already made, again completely unwinding the substantially consummated Plan. But again, this challenge lacks merit. There was ample justification for both classification and treatment. 2425 WL was classified as an unsecured claim because its asserted junior lien on the Property was indisputably out of the money. The classification of all Choudhri related entities was justified because their claims are suspect and subject to unresolved objections, and the affirmative claims for recovery likely to be asserted by the liquidation trust will be asserted against those entities. It makes no sense to give these entities an interest in recoveries from them.

13.     Finally, 2425 WL challenges the exculpation and gatekeeping provisions of the Plan, which if overturned would require the unwinding of the Plan as they were integral to the bargain struck and NBK's funding commitment. But again, this challenge lacks merit. Only the Trustee and his counsel are exculpated under the Plan as required by Fifth Circuit precedent. *See Highland Capital*, 48 F.4th at 437-38 (exculpation for non-debtors under a plan may only cover a "creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties."); (*see also* Conrad Decl., Ex. 4 ¶ P. ("[n]otwithstanding any provision in the Plan, including Article IX.C of the Plan and the definition of Exculpated Party contained in Article I.A.39 of the Plan, 'Exculpated Parties' shall mean only the Chapter 11 Trustee and any Related Parties of the Chapter 11 Trustee.")). And the gatekeeping provisions are similarly consistent with applicable law because (a) the releases under the Plan only cover estate claims, not the direct claims of a non-debtor against a non-debtor, and (b) the Bankruptcy Court's role is limited to confirming that a non-debtor is not trying to pursue a colorable claim that is not a released estate claim. *See Highland Capital Mgmt., L.P.*, 48 F.4th at 439 (affirming the "inclusion of the injunction and the gatekeeper provisions in the Plan.").

## THE APPEAL SHOULD BE DISMISSED

14.     This Appeal should be dismissed now, before merits briefing, for two reasons.  First, case law is clear that the failure to timely file a designation of record and statement of issues for appeal by even just a few days is grounds for dismissal, especially where, like here, the only plausible inference is that ignoring the deadline was intentional.

15.     Second, because the issues on Appeal lack merit, the Appeal is moot.  2425 WL never obtained a stay of the Confirmation Order.  The sale to NBK has closed.  The Plan is effective and substantially consummated and parties have changed their positions, made payments, made and accepted distributions, released liens on the Property and released claims against released parties based on the unstayed Confirmation Order.  Any relief now would require everything done in reliance on the unstayed Confirmation Order to be undone, and that relief would necessarily affect the rights of parties not before the Court.  Equitable mootness, thus, compels dismissal to uphold the finality of the confirmed Plan and safeguard all parties who relied on the unstayed Confirmation Order.

### A.  2425 WL's Late Designation of Record and Statement of Issues Compels Dismissal

16.     2425 WL did not comply with Bankruptcy Rule 8009(a)(1).  The rule requires that an appellant file and serve a designation of items to be included in the record on appeal and a statement of the issues to be presented within 14 days after filing its notice of appeal.  *See* Fed. R. Bankr. P. 8009(a)(1)(B)(i).  Although complying with this time limit is not jurisdictional, "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal" is grounds for the district court to dismiss the appeal.  Fed. R. Bankr. P. 8003(a)(2).  The deadline for filing a designation of record and statement of issues is designed to encourage prompt prosecution of appeals.  This is especially true for bankruptcy cases "because of the inherent prejudice to creditors when the estate of a bankrupt is subject to dissipation by expenses incurred each additional day"

and therefore "some device is necessary to insure that appeals taken are diligently prosecuted." *In re Pyramid Mobile Homes, Inc.*, 531 F.2d 743, 745 (5th Cir. 1976) (per curiam).

17.     While courts in some Circuits are required to find bad faith, negligence, or indifference before dismissing an appeal for failure to comply with non-jurisdictional deadlines, in this Circuit, no such finding is required.  *See In re Nikolai*, 5 F.3d 1495, at *3 (5th Cir. 1993). *Compare In re Beverly Mfg. Corp.*, 778 F.2d 666, 667 (11th Cir. 1985) (requiring courts to find bad faith, negligence, or indifference prior to dismissing an appeal for failure to timely file a brief).

18.     That said, when deciding to dismiss an appeal because the appellant has missed a deadline, the "[a]ppellant's good faith alone" is not enough to prevent dismissal.  *Nikolai*, 5 F.3d at *2.  Even an "honest oversight of an appellant's attorney" can be grounds to dismiss an appeal if the designation of record and statement of issues are not filed in a timely manner. *Id.*  Additionally, "because 'time is of the essence' in bankruptcy proceedings" delays are "almost invariably . . . prejudicial to an appellee in such circumstances."  *Id.* at *2 (quoting *In Re Braniff Airways, Inc.*, 774 F.2d 1303, 1305 (5th Cir. 1985)).  Thus, the Fifth Circuit has "decline[d] to be a party to further prejudice" by overturning a court's dismissal of an appeal when the appellant has displayed "obstinately dilatory conduct."  *See Pyramid Mobile*, 531 F.2d at 746.

   i.     **2425 WL Has Been Obstinately Dilatory**

19.     Although 2425 WL has not offered any explanation as to why it missed the deadline for filing its designation of record and statement of issues - it did not seek relief from the deadline before or after it passed – the rationale inference is that it missed the deadline intentionally.

20.     2425 WL had hoped that QB Loop would close and assume the Jetall lease, and 2425 WL only filed the designation of record and statement of issues after the deadline because

that benefit had evaporated.[6]  It simply cannot be a coincidence that 2425 WL delayed 18 days

beyond a clear deadline it has known about or complied with in other appeals before this Court to

file its designation of record and statement of issues (and of which it received notice from the

Bankruptcy Court), and then filed ***three hours*** after the Trustee filed the August 9 notice of QB

Loop's failure to close making clear his intent to close with NBK as the backup bidder and not

extend the time for QB Loop to close.

21.     On these facts, even applying the higher standard applied in the Eleventh Circuit in

*Beverly* and other circuits, the Appeal should be dismissed.  There was no mistake here, much less

an "honest" one.  Indeed, courts have not hesitated to dismiss an appeal after an appellant filed its

designation of record 15 days' late without a decent excuse.  *See, e.g.*, *In re Serra Builders, Inc.*,

970 F.2d 1309, 1311 (4th Cir. 1992) (affirming the dismissal of a bankruptcy appeal because the

appellant filed its designation of the record on appeal fifteen days late and did not request an

extension until after the deadline had passed; noting that the only explanation offered was that the

appellant's attorney was out of the country).

**ii.    Prejudice to NBK**

22.     2425 WL's late designation of record and statement of issues also has prejudiced

NBK.  The Fifth Circuit has stressed that "in virtually any bankruptcy proceeding, time is the

essence of prejudice" and thus the efficient resolution of appeals is necessary to ensure the

bankruptcy estate can be administered efficiently.  *See Pyramid Mobile*, 531 F.2d at 746.  However,

---

[6]  In addition, family members and trusts related to Mr. Choudhri are investors in QB Loop.  QB Loop's failure to close by the "Outside Closing Date," to put it mildly, puts at risk an approximately $2.1 million earnest money deposit by QB Loop.  This possibility only highlights that the decision by 2425 WL to ignore the deadline while that money was not at risk was intentional, and to file the designation of record and statement of issues late once that money was at risk, was in response to the money being at substantial risk because QB Loop did not close.

the Appeal does the opposite by aiming to disrupt the transfer of the Property to NBK and unwind actions taken in reliance on the unstayed Confirmation Order and finality of the confirmed Plan.

23.    Additionally, the late filings threaten to collaterally attack the Bankruptcy Court's unstayed *and* unappealed Sale Order by unwinding the sale to NBK and eliminating the good-faith purchaser protections granted to NBK under section 363(m) of the Bankruptcy Code.  That result is prejudicial to NBK, other parties and the integrity of the bankruptcy process.

24.    For the foregoing reasons, the Appeal should be dismissed for 2425 WL's failure to timely comply with Bankruptcy Rule 8009(a)(1).

**B.  2425 WL's Appeal Is Moot**

25.    The equitable mootness doctrine "allows courts to abstain from appeals of plan confirmation orders, allowing the interrelated web of parties to rely on a final decision."  *In re Sneed Shipbuilding, Inc.*, 916 F.3d 405, 408 (5th Cir. 2019).  The doctrine is "unique to bankruptcy proceedings, responsive to the reality that 'there is a point beyond which a court cannot order fundamental changes in reorganization actions.'"  *In re Texas Grand Prairie Hotel Realty, LLC*, 710 F.3d 324, 327 (5th Cir. 2013) (quoting *In re Scopac*, 624 F.3d 274, 281 (5th Cir. 2010)).

26.    For years, the Fifth Circuit has held that the doctrine is intended to "strik[e] the proper balance between the equitable considerations of finality and good faith reliance on a judgment and competing interests that underlie the right of a party to seek review of a bankruptcy order adversely affecting him."  *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994).  In striking this balance, there must be a "plan that is at least 'substantially consummated.' . . . . That end stage of the Chapter 11 process must be reached because the concern of equitable mootness is that appellate reversal might undermine the plan and the parties' reliance on it."  *Sneed Shipbuilding*, 916 F.3d

at 409 (quoting *In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009); *In re Hilal*, 534 F.3d 498, 500 (5th Cir. 2008)) (citations omitted). [7]

27.    A bankruptcy appeal is therefore equitably moot when (i) a plan and confirmation order has not been stayed, (ii) the plan has been substantially consummated, and (iii) the appellant's appeal would "affect either the rights of parties not before the court or the success of the plan." *Scopac*, 624 F.3d at 281.

28.    Only the last two factors apply here because the Plan has not been stayed. [8] Applying these two factors, the end stage has been reached because the Plan has been substantially consummated and the Appeal will affect the rights of parties not before the Court and who relied on the unstayed Confirmation Order to implement the Plan after QB Loop failed to close the sale of the Property.

### i.    The Plan Has Been Substantially Consummated

29.    A plan is substantially consummated under the Bankruptcy Code when it goes effective and all or substantially all property covered by the plan has been transferred, the successor to the debtor has assumed all or substantially all property dealt with by the plan, and distributions under the plan have commenced.  *See* 11 U.S.C. § 1101(2).

30.    This Plan became effective on August 21, 2024, the first business day after the following conditions were all satisfied:  (i) the Confirmation Order was entered and had not been stayed or vacated; (ii) all conditions precedent to any asset purchase agreement for the Property were satisfied; (iii) the transactions contemplated under the purchase agreement were consummated; (iv) the Liquidation Trustee was appointed and the Liquidation Trust received

---

[7]  Other circuits explain that balance as "recogniz[ing] that a plan of reorganization, once implemented, should be disturbed only for compelling reasons."  *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994).

[8]   As explained above, there are no issues raised by 2425 WL that require appellate review.

funding contemplated under the Plan; and (v) there was no order restraining NBK from consummating the Plan or taking title to the Property as the successful bidder for the Property. (*See* Conrad Decl., Ex. 4, Plan Art. VIII.B.)[9]

31.    The Plan also has been substantially consummated.  Not only does the Confirmation Order provide that the Plan will be deemed substantially consummated when it goes effective (*see id.*], contemporaneous with the occurrence of the Effective Date, all the Debtor's property, the Property, and funding from NBK if it became the successful bidder, was dealt with.  The Property was sold to NBK, the conditions to close the sale under the Stalking Horse Agreement were satisfied and the transactions (*i.e.*, the sale to NBK) contemplated under the sale agreement were consummated.  The Liquidation Trustee was appointed to administer the Liquidation Trust.

32.    NBK funded its obligations under the unstayed Confirmation Order and as a result, secured real estate tax claims have been paid in full in agreed-upon amounts, funding has been provided to pay other secured claims and priority claims in full, NBK's claim for its tax liens claims has been waived, funding has been provided to make a minimum aggregate payment to general unsecured trade creditors and the Liquidation Trust has been funded to reconcile claims against the estate, prosecute retained actions for the trust's non-insider beneficiaries, and make distributions in accordance with the confirmed Plan.  In addition, all cash and remaining assets have been transferred to the Liquidation Trust and estate claims against NBK (if any) have been released.

33.    Thus, the second *Scopac* factor for equitable mootness is satisfied.

---

[9] Capitalized terms used but not defined herein have the meaning ascribed to them in the Plan. (*See* Conrad Decl., Ex. 4).

**ii.    The Appeal Will Affect the Right of Parties Not Involved In the Appeal and/or the Success of the Plan**

34.    The third *Scopac* factor likewise weighs in favor of equitable mootness.  This factor asks whether "the relief requested would affect either the rights of parties not before the court or the success of the plan." *Pac. Lumber*, 584 F.3d at 240 (quoting *Manges*, 29 F.3d at 1039); *In re Hammersmith Development Co.*, 248 F.3d 1142 (5th Cir. 2001).  The analysis asks whether, for "each individual claim," "the relief that a party requests will likely unravel the plan," *In re Blast Energy Servs. Inc.*, 593 F.3d 418, 425 (5th Cir. 2010), such that the "potential impact on the reorganization scheme as a whole" militates against granting the relief.  *Pac. Lumber*, 584 F.3d at 241. Thus, "if no stay has been obtained and the plan has been substantially consummated [both of which are true in this case], the more likely the third prong indicates equitable mootness." *Blast Energy*, 593 F.3d at 424-25; *see also In re ASARCO L.L.C.*, 401 F. App'x 914, 916 (5th Cir. 2010).

35.    Reversal of the Confirmation Order would affect the rights of parties not before the Court and/or the success of the confirmed Plan.  The Trustee has diligently worked to manage the estate and preserve its value and relied on the unstayed order to sell the Property to NBK after QB Loop failed to close and receive funding for the Liquidation Trust in amounts necessary to pay administrative expense and priority claims in full and fund an aggregate amount for distribution to non-insider unsecured trade claimants, and to make distributions to secured tax claimants for unpaid property taxes (other than NBK's waived claims for certain tax liens).  It would be unfairly prejudicial to require these parties to return the payments if the Confirmation Order is set aside.

36.    Moreover, reversal would be value-destructive and likely doom the success of the confirmed Plan that provides many out of the money non-insider creditors with some cash recovery or an interest in litigation recoveries against the Debtor's insiders and affiliates.  The Trustee would be required to void the Stalking Horse Agreement and incur more administrative expenses trying

14

to re-sell the Property and recover payments made under the confirmed Plan, without any funding or agreement for the estate to use NBK's cash collateral, or any reasonable expectation that NBK would again proceed with a chapter 11 plan of liquidation or process that provides for any recovery to even a subset of out-of-the money creditors through its sharing of its collateral value.  Also, if the case converts to a Chapter 7 liquidation, only NBK and secured creditors will receive a recovery, assuming a sale of the Property, leaving all other non-insider creditors with an economic stake under the confirmed Plan with nothing.

37.     In sum, nothing can be done in response to 2425 WL's Appeal "without interfering with the finality" of the Plan and actions taken in reliance on the unstayed Confirmation Order including by third parties not before the Court.  *In re Superior Offshore Int'l, Inc.*, 591 F.3d 350, 353 (5th Cir. 2009). The relief requested by 2425 WL will "likely unravel the plan; it is "impracticable and inappropriate for" this Court "to grant such relief"; and instead the Court must "abstain[] from reviewing the appeal." *Blast Energy*, 593 F.3d at 425 (5th Cir. 2010) (citing *Pac. Lumber Co.*, 584 F.3d at 240).

## CONCLUSION

For the foregoing reasons, the Court should enter the proposed order attached as Exhibit B dismissing the Appeal.

15

DATED: August 23, 2024            **PILLSBURY WINTHROP SHAW PITTMAN LLP**

*/s/ Charles C. Conrad*
Charles C. Conrad
Texas State Bar No. 24040721
Ryan Steinbrunner
Texas State Bar No. 24093201
609 Main Street Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

- *and* -

Andrew M. Troop (Bar No. MA547179)
Patrick E. Fitzmaurice*
Kwame O. Akuffo*
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
andrew.troop@pillsburylaw.com
patrick.fitzmaurice@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

*Admitted *pro hac vice*

***Counsel for National Bank of Kuwait, S.A.K.P., New York Branch***

16

## CERTIFICATE OF SERVICE

I hereby certify that, on August 23, 2024, a true and correct copy of forgoing motion was served via the Court's CM/ECF system on the Chapter 11 Trustee, 2425 WL, LLC's counsel of record and all others who are deemed to have consented to ECF electronic service in this Appeal, and also by mailing a copy of the motion, first class, postage prepaid, to each of the parties on the attached service list.

_/s/ Charles C. Conrad_
Charles C. Conrad

## CERTIFICATE OF CONFERENCE SERVICE

On August 22, 2024, the undersigned hereby certifies that he emailed Appellant's counsel regarding the motion in compliance with the meet and confer requirement in Local Civil Rule 7.1 and the Court's procedures. The undersigned and Counsel for Appellant also spoke on August 22, 2024 and August 23, 2024.  Counsel for Appellant responded indicating that he was not yet able to report whether the Appellant would oppose the relief sought in the motion.

_/s/ Andrew M. Troop_
Andrew M. Troop

<u>**Service List**</u>

**<u>Appellant's Counsel:</u>**
H. Gray Burks, IV
Burks Baker, PLLC
950 Echo Lane Ste 300
Houston, TX 77024

**<u>Chapter 11 Trustee:</u>**
Christopher R. Murray
602 Sawyer Street Ste 400
Houston, TX 77007

**<u>Chapter 11 Trustee's Counsel:</u>**
R. J. Shannon
Shannon & Lee LLP
2100 Travis Street Ste 1525
Houston, TX 77002

**<u>U.S. Trustee:</u>**
Office of United States Trustee
Attn: Jana Smith Whitworth
515 Rusk Street Suite 3516
Houston, TX 77002